Bass v. Tour 18 at Rose Creek, 18-6184. Good morning, Your Honors, and may it please the Court. I'm Andy Lester here on behalf of Tour 18. Instead of giving full force and effect to each part of the master member agreements, the contract at issue in this case, the trial court essentially eliminated the last and actually longest paragraph of this relatively short document, the termination clause, ignored disputed facts and erroneously granted summary judgment against Tour 18. It found termination under the club rules to be incompatible with the master's membership and thereby failed to construe the contractual provisions consistently with each other. And that happened despite numerous material factual disputes that absolutely precluded summary judgment against Tour 18. Mr. Lester, does it matter on the first page that all of these things are identified as privileges? We'll provide member and his family as described herein the following privileges in addition to those offered club membership privileges offered to any other golf club member. In light of what you just said, reading the document as a whole, isn't the context of each one of those paragraphs, including the asterisk provision that's in dispute, in the context of what is a privilege to the master member, not what are rights that are afforded to Tour 18? Yes, I think it does. I think when you read this document as a whole, the master's members received all sorts of rights, privileges, whichever word you'd like to use, by having that master's membership. It wasn't simply no membership dues beyond what the payment was. It was they got to have their names inscribed in certain places. They got to have all those types of things. They got to pass down their membership to their spouse or child. They could pass it on. That's correct. They had all sorts of benefits as a result of that, all of which had to be read together with the termination clause, which, as I say, is the single longest paragraph in the document. It's not that long, but it's the single longest paragraph. It's right above where they signed the document. Well, I guess it doesn't matter how long that paragraph is if it didn't, under the law that governs, incorporate by reference the rule that you rely on to terminate them, right? A lot of the action below was whether it incorporates it by reference. I'm not sure it actually needed to incorporate it by reference, but that was the argument below. Well, the Oklahoma court is pretty clear that if you want to enforce a term, it's got to be incorporated by reference. Here again, I won't belabor the point. We'll call it incorporation by reference. Under this, the language that's included here, the language that's in the contract here, and frankly, the facts of this case, the facts distinguish this case from the Walker case, which was the Oklahoma Supreme Court decision that's cited below. The facts of this case are a lot more like the Mooneyham case than the decided by this circuit just a couple of years ago. I would note that all those cases deal with arbitration clauses that are in these other contracts. That's not what we're dealing with here. Here we're dealing with club rules for a golf course. Well, Walker wasn't an arbitration, was it? I believe it was. It's dealing with the terms of sale. Yes, that included an arbitration clause. Okay. Yes, correct. Yes, and that was the issue. Did terms of sale make this any different? And I think the answer to that is yes, there, because terms of sale were something that were included in the contract. And the Oklahoma Supreme Court said there is nothing to distinguish terms of sale in the contract from terms of sale that were somewhere else. Looking at the membership agreement, are the rules that you rely on clearly referenced so that they are identified, the location and the identity of the document is clear? Well, let me put it this way. I think the answer is yes. Golf club rules are generally located in clubhouses. But this gets to one of the important points about the fact that we have disputed factual issues. There was testimony that every master's member received a copy of the club rules before signing the master's membership agreement. Did those club rules change? They did not. Okay. They're the same ones. They could have, right? In the district court, you made it clear that you weren't referring to a specific set of rules, but that the rules were subject to change, right? Well, and the district court even found that that was, at least in the judge's original ruling on the temporary injunction hearing, said that was just fine. It didn't have to. Well, don't you have to identify it by what date? The rules as of X date? It didn't say it that way, but the rules never changed, and there is evidence to that effect in the record that precludes summary judgment here. I can point to seven different facts that are in the record that preclude summary judgment. Did the rules exist when these agreements were signed? Yes, Judge Seymour, they did. As I understand it, Tour 18 managed the clubhouse at the beginning? That's correct. Tour 18 managed the clubhouse at first before it purchased the golf club. And when were the club rules officially adopted? I assume these were rules that were different than the rules that the club had before Tour 18 took over. That's my understanding also, Judge Seymour. They were written during that time period of management before Tour 18 purchased the golf club and before these master membership agreements went into existence. And here again, it's all cited in our reply brief, especially at page 4, 5, 9, and 10, evidence to that effect. Now, is it evidence that one has to credit? Well, no, of course not. But it's evidence that's in the record, sworn testimony, that the master's members received a copy, that the club rules were agreed to by the master members. They wouldn't have signed the agreements without knowing the rules. They were in place when they first solicited the master's members. That's in the reply brief at page 5. They were delivered, the master members delivered these agreements at the clubhouse. There was something raised that maybe the clubhouse didn't exist at the time. Well, the new clubhouse didn't exist at the time, but the old clubhouse existed at the time. That the club rules were posted at the clubhouse, that's on page 10. Does the master agreement say anything about a clubhouse and that the rules will be found at the clubhouse? I don't believe so. Doesn't it have to under Oklahoma law? It's got to be identified beyond doubt exactly what you're talking about to incorporate a document. No, I don't believe it does have to say these rules are located at the clubhouse, especially when, as fact number seven, I went through six of them. Let me give you fact number seven that's in dispute, that the rules were included in the membership packages. Well, what testimony do you rely on for that? Who are you relying on? I'm sorry, I didn't hear the beginning of the question. Whose testimony? Are you relying on Dennis Wilkerson? I believe so. I can't remember if it's Dennis Wilkerson. His testimony is they received a copy of the R&Rs prior to executing the MMAs as far as he knew, as far as I know. That's not very compelling testimony. It may not be. And he said that they may have received the R&Rs in the mail, quote, if somebody mailed it to them. That doesn't sound like particularly compelling testimony either. Well, in summary judgment, I'm not sure it has to be compelling. He doesn't have any personal knowledge. He says they got them as far as he knew. They got them if somebody mailed them to him, but I'm not the one that mailed them to him. Here again, I can go look at page 10 of our reply brief. Maybe that's what you're looking at. I don't know. I've referenced that's where it is on page 10 of our reply brief. I think there is sufficient evidence, adequate evidence, to preclude summary judgment in this case. Here again, a fact finder might disagree with Mr. Wilkerson or Mr. Bailey, who also provided some of this testimony. But we're on summary judgment. That's what it says on page 10, your quote from Dennis Wilkerson testifying. Well, is it your testimony that every master member received a copy of the rules? Yes, I've already testified to that. Yes. Does the application note on there that they're getting a copy of the rules? Answer, no. The rules are included in the membership package. It's the specific testimony. Correct. Did the members, did the plaintiffs testify, didn't see the rules, weren't given the rules, didn't have the rules? I believe one of them did back at the beginning of the case. Did any of them testify they did have the rules? There was virtually no testimony from any of the masters members.  Here again, I think what the court must do is to take the contract as a whole. The contract as a whole is quite clear that there is the termination as possible, and lifetime membership is qualified by this termination provision. The termination provision clearly refers to club rules. I think that the club rules actually could change. I don't think Oklahoma law requires that the rules have to be static, but, in fact, they did not change. I mentioned in the reply brief, and I'll say it here, I think that we're dealing with two provisions here. We're dealing with the termination clause. Members' membership may be terminated at any point in time pursuant to the club rules as established and published by Tour 18. And the provision in the club rules that Rose Creek Management may terminate a member at any time if deemed necessary. Using the ‑‑ I referenced Huckam's Razor. Using that rule, the simple direct answer is that Tour 18 had the right to terminate these memberships and did so. While there are facts precluding summary judgment here against Tour 18, I think this court can and should reverse with instructions. I'd like, if I may, reserve the rest of my time. Sure. Thank you. May it please the Court, Ryan Dean for Andy Bass and the other master member appellees. I think Judge McHugh hit on a key point in this case, and that is whether or not these rules and regulations were properly incorporated into the master membership agreement. And I think the best starting point on that is to look at the language, what appellant gratuitously refers to as a termination clause, does not really grant Tour 18 the power to terminate the memberships at all. All it says is that if they're terminated pursuant to club rules, then you get your money back, pro rata refund. It doesn't say they may terminate. It implies they can be terminated, doesn't it? And then you look at the club rules. I think it's an attempt to try to refer to something club rules. What club rules? I don't know. They also have privileges at other golf courses. And so the basis is this point. And they recognize that they have to refer to something else, to another document to give them the power, because in their brief... The club rules, don't all country clubs have rules? I'm sure that they have some rules, but that is... Doesn't that put the people who sign this contract on notice that there are club rules? It may put them on notice, but that is only part of the inquiry of Walker. Walker says that to incorporate them into the document, which is necessary here. And they don't have to...Walker also says they don't have to be attached to be incorporated. They don't have to be attached to be incorporated, but they have... Didn't the district court use that as a reason to say they weren't incorporated because they weren't attached as an exhibit? That was part of the reason, but also their location is not identified in that... Wouldn't anyone who joins a country club think the rules might be at the country club? And isn't there evidence they were posted at the country club where these people played golf for eight years? I believe that that is...they were posted at a clubhouse, and is what the testimony from Tour 18 is, but also the master membership and the purpose of raising this money was to build a clubhouse, so... That was the new clubhouse. There was an existing clubhouse. At which these members played golf at the time they signed these membership contracts. Sure. And again, they may be on notice, but to incorporate that in, you have... The Walker case, the test is you have to make clear reference to the extrinsic document. This just references club rules and describe it such that its identity and location can be ascertained without doubt. It's not describing it. Why aren't there fact questions in this case? I think the only facts that are... Are your clients had copies of the rules? Saw copies of the rules? Knew what this contract meant when it said the club rules? I think that the only facts, the only material facts to this case that matter, are that all of the appellees were either master members or had the benefits of the master membership agreement, and that their memberships were terminated. Everything else at issue in this, the incorporation and the interpretation of the contract, can be ascertained by the four corners of the contract themselves. Even, like I said, even if they were put on notice of it, that's only part of the inquiry. They did not incorporate it in pursuant to Walker. Walker says it doesn't have to be attached to be incorporated. It does not have... What club rules could the agreement that these golfers signed in connection with a specific club mean other than the rules of the country club? Well, it could mean the... I think that... I don't know what else it could mean, and that's part of the problem because it's not clearly referenced in the contract. Like I said, there was other clubs that they had privileges at pursuant to the master membership agreement. Why would they be signing a master membership agreement that incorporated, purported to incorporate club rules from someplace else? Does that make any sense? It doesn't make any sense, but it was not clearly ascertainable by the language of the contract itself. And I think it's highlighted by what exactly does club rules mean. Tour 18 drafted these contracts, and they clearly knew how to... So isn't it ambiguous if it isn't clear? I think any ambiguity can be resolved through the language of the contracts themselves. Maybe if it's not clear, if we don't know what club, as you say, your clients wouldn't have a clue what club rules they were talking about, even though they were signing a membership agreement to a specific club. Then there would be no... If it's not clearly referenced, then there is not an extrinsic document that will give them the power to terminate the memberships. And Tour 18, as I said, draft... If there is an ambiguity, it should be construed against the drafter. It's undisputed that Tour 18 drafted these agreements, and they knew how to properly incorporate documents into their contract. There's an escrow agreement that is referred to in the contract as Exhibit A, and it is adopted and incorporated by reference. That is the proper way and the clear, undeniable way to incorporate an extrinsic document into a contract. Walker, that's one way. Another way is to refer to it, but not attach it. It's an exhibit. You don't have to attach it, but you have to clearly say where it can be found. And in Walker, that was the specific question from this court, is what they were relying on in Walker or trying to incorporate were terms and conditions that were found on the website of BuildDirect. And like the master members here, the Walker case was an online purchase, so clearly the Walkers knew that BuildDirect had a website, just like the master members here may know that there could be club rules somewhere. But in Walker, the plaintiffs were not walking through the website like they're walking through the clubhouse when they play golf. I assume they're browsing the website, but that's why it's important to clearly reference where they're found. And another shown that how you could reference it without a doubt is when you look at the termination letter that Tour 18 sent out. Tour 18's termination letter doesn't say, we're terminating your membership pursuant to the club rules. The termination letter says, we're terminating it pursuant to the rules and regulations resignation of membership section. So the termination letter refers to both the title of the extrinsic document, the rules and regulations, and the specific provision that they're relying on. Let's look, assuming for a minute that it is properly incorporated, looking at the resignation of membership, it says Rose Creek Management may terminate a member at any time if deemed necessary. Did that give them the power, assuming they're incorporated by reference, did that give them the power to terminate the master memberships because they deemed it necessary? I think there's two parts to answer that question, Your Honor. First, and what the appellant has never really addressed, either in argument today or in the briefs, is that they are correct that to construe a contract, you've got to look at the contract as a whole and give effect to all the provisions in the contract. So they're relying on this isolated resignation of membership. First off, a note under the resignation of membership section that says they may deem it as necessary. They may terminate as they deem necessary. If you look throughout the rules and regulations, assuming that document is incorporated by reference, you've got to look at all the other provisions in that document, and there are other provisions. There is something in that document that is called club rules, which I think is what the— if club rules in the master membership agreement means anything, it means the enumerated club rules that govern and restrict the behavior of the members of the golf course that are located within that rules and regulations. And within those club rules is a provision that says if you violate any of these rules, you'll be subject to discipline. Later on in the rules and regulations, it says if you violate the club rules, you're subject to discipline, and there is a three-step disciplinary procedure. First, you're warned. Second, you are suspended. And third, you could be terminated. If Tour 18 has the ability to terminate as they deem necessary, that completely eviscerates and makes that provision meaningless, that it is unnecessary and superfluous, and that violates the rules of construction in Oklahoma. You've got to give effect to all provisions in a contract, and the interpretation that Tour 18 is asking for would just completely nullify that provision,  and so there's another provision in there that talks about termination that says you can be terminated if you're acting in a way that is unbecoming of a gentleman or lady, or if you're not acting in the best interest of the club. That, too, is completely eviscerated. They can just terminate you if they deem necessary. That makes both of those provisions completely meaningless, and so to give effect to all of these provisions, assuming that we get past the idea of incorporation, if we're going to look at the contract as a whole, which is the Master Membership Agreement and these rules and regulations, you've got to give effect to it all, and considering this note is under and in the provision called Resignation of Membership, I think the most likely reading of that is you tell Tour 18 you're giving them your 30 days' notice, I'm resigning in 30 days, and Tour 18 says, you don't need to give your 30 days' notice, you're terminated immediately. That phrase or provision, note, conditions the first part of that. What it says is that upon receiving the letter, dues will stop on the date requested. Do Master Members pay dues? They don't. That's another point, Your Honor. They do not pay any dues. They paid for their membership up front, and so that, and I believe Judge Russell pointed out that it indicates that that provision does not even apply to Master Members, and certainly not a note under that provision. So it also would violate other parts of the Master Membership Agreement. As you pointed out, Judge McHugh, you can transfer it to your spouse, to your heirs. The fact that you can be terminated at any time makes that provision meaningless. Also, if Tour 18 can terminate as they deem necessary, that gives them the ability to skirt their responsibility to pay you back if they're going to sell the club or stop operating, and we think that's what happened here, and there's evidence in the record that they were getting ready or trying to sell the club, and they were trying to rid themselves of that liability that they'd incur if they did that, and so they terminated everybody. And I want to touch briefly, another part of this is on the damages, and I think the damages are clear, and it's set forth in Tour 18's own testimony what the value of a membership was. It was $350 a month, and what the Master Members missed out on because of the termination was the ability to use their membership for roughly 15 months, and so whether they were out there playing golf every day or never, the fact that they're a member of the club has a value, and the value of that is set by Tour 18's own testimony, and it's undisputed and it's clear, and it is what puts the Master Members back where they were had this breach not occurred. And so I would just close by saying that Tour 18 is trying to cherry-pick a note to justify their termination of a lifetime membership of these people, as well as cherry-picking a note from an inapplicable provision in a document that was not properly incorporated into the contract, and which, if given their meaning, would completely eviscerate and make meaningless other provisions of that contract. And so that interpretation is contrary to Oklahoma law, and the district court properly construed the contract within the four corners and found that they did not have the ability to terminate the contract, and that the termination was a breach of that contract, and also properly determined what the damages of the Master Members were by virtue of that termination. And so I believe Judge Russell's ruling was proper and was well-founded in Oklahoma law, and I'd ask the court to affirm his ruling. Thank you. Thank you. Mr. Lester? First, there's no evidence that the club was sold. It's about to be sold. It wasn't sold. It still is owned by Tour 18. The court below said the termination provision in the rules was incompatible with resignation. And let me just address one thing that counsel said, that there was a part that said in the rules and regulations it says club rules. Well, there's a part that says general club rules. The appendix, page 253. The rules start on page 252. And there is a part that says general club rules, but that's not the entire set of rules. And the resignation of membership provision does say what it says. It talks about resignation of membership. Judge Russell said that can't even apply here. Well, of course it can apply. Lifetime members resign from lifetime things all the time. And it works the other way around. Sometimes lifetime privileges are revoked. We've seen that at a lot of colleges and universities lately, say with the Sackler family or Jeffrey Epstein. But Rose Creek Management may terminate a member at any time if deemed necessary. I mean, it says what it says. And it means what it does. I would liken this provision to sort of like an employment at will provision. One might see a whole set of rules and regulations regarding employment in an at will employment setting even, not simply where there's, say, a property right in continued employment. And there are still these rules, and you can be fired for violating this rule if you're intoxicated or if you commit a crime or what have you. But there's still going to be at some point in that document, if it's done properly, a note that says, by the way, we can still terminate you at any time for any reason. This doesn't give you a property right in continued employment, say. Well, besides whether there's a property right, how would it be clear to a recipient of the agreement that there is a set of provisions for various acts of misconduct, that there's going to be this graduated system of penalties, and without regard to a due process issue, you have a separate provision saying that we can terminate you at any time for any reason. What would the first provision mean then about the graduated penalties? How would that? Well, it would be telling, for example, in the employment setting, it's telling the employee, you know, if you show up late to work, we're going to write you up. That isn't a good thing. That's a bad thing. If you show up intoxicated, all right, we're going to have somebody drive you home, and that's going to be a bad thing. If you do this repeatedly, we can fire you. And by the way, we can fire you at any time for any reason. But, you know, this is the way we typically act. I believe my time has expired.  You can have 30 seconds. Well, thank you, Your Honor. Briefly on the damages, just because something has value, X value for one side in the contract, doesn't mean that it has that same value to the other side. There is no evidence of what the damage was to these individuals, none. We'd ask first that the court reverse this with instructions, but if not, reverse this because there are factual disputes that preclude summary judgment against Jury 18. Thank you. Thank you, Mr. Lester. Thank you, counsel, for both sides for your excellent advocacy.